CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 0 9 2007
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 5:06cr00054-001 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| JUAN E. CASTRO ) | By: Samuel G. Wilson |
| ) | United States District Judge |
| ) | |

A jury found defendant, Juan E. Castro, guilty of conspiracy to distribute and of possession with intent to distribute five hundred grams or more of methamphetamine. Castro has moved for a new trial, claiming that newly-discovered evidence proves that an interpreter was present when officers searched his apartment and interviewed him, contrary to the trial testimony of those officers. Castro claims that this discrepancy is material to his defense. For the reasons that follow, the court finds that the evidence is not sufficient to warrant a new trial and accordingly denies his motion.

## I.

A grand jury in the Western District of Virginia indicted Castro on four counts. Count I alleges a conspiracy to distribute five hundred grams or more of methamphetamine in violation of 21 U.S.C. §§ 841 and 846; Count II alleges that he possessed with intent to distribute five hundred or more grams of methamphetamine in violation of 21 U.S.C. § 841; Count III alleges that he possessed a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c); and Count IV alleges that certain assets were forfeitable to the United States pursuant to 21 U.S.C. § 853. Castro entered a plea of not guilty. On March 29, 2007, a jury found Castro guilty of Counts I and II, and not guilty of Counts III and IV.

Sergeant Darold Crawford, a member of the Rockingham County Sheriff's Office, testified that he participated in the search of Castro's home and that Castro directed him to the closet where the drugs were located. Trial Tr. at 19-20, March 29, 2007. Investigator Doug Miller, an officer with the Harrisonburg Police Department, also testified that he participated in the search of Castro's apartment and assisted in collecting evidence. Miller testified that during the search of Castro's apartment, officers found under Castro's bed a safe that contained a .45-caliber handgun, $9,750.00 in United States currency, and two boxes of ammunition, and they found a 12-gauge, semi-automatic shotgun in one closet and six pounds of methamphetamine in six separately wrapped packages in a trash bag wrapped in a jacket in a second closet. Miller testified that he spoke with Castro at the Rockingham County Sheriff's Office that evening, and that Castro told him he recently received the methamphetamine found in his apartment and that the shipment was originally ten pounds. Trial Tr. at 30-32. According to Miller, Castro agreed to attempt to make phone contact with his supplier, although Miller could not recall whether Castro reached his supplier that evening. Trial Tr. at 31. Special Agent John Dodson, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, testified that he participated in interviews with Castro at the Rockingham County Sheriff's Office. Dodson testified that Castro told him who Castro's supplier was and that the drugs recovered from his home were from a ten-pound shipment Castro was holding for someone. According to Dodson, Castro said that four pounds of the shipment had already been provided to a buyer but the buyer had not yet paid and that the remaining six pounds were to be delivered after payment. Trial Tr. at 41-42. Dodson testified that Castro told him he would either travel to his supplier in North Carolina, or that his supplier would come to him in Harrisonburg. Trial Tr. at 42. According to Dodson, Castro used

a cellular phone at the police station to contact his supplier and had a conversation with his supplier in Spanish, which Castro translated into English for Dodson. Trial Tr. at 44-46.

The issue of an interpreter's presence first arose during the cross-examination of the government's third witness, Investigator Miller. On cross-examination, Castro's attorney asked Miller whether a Spanish-English language interpreter was present during the search of Castro's apartment and during conversations between officers and Castro, and Miller responded "No," and testified that Castro "[U]nderstood the English language enough to communicate successfully." Trial Tr. at 34-35. The government next called Agent Dodson. Dodson testified that he spoke with Castro in English and that Castro indicated he understood Dodson. Trial Tr. at 40-41. On cross-examination, Castro's attorney asked Dodson whether an interpreter was present during his interactions with Castro, and Dodson replied, "I spoke with Mr. Castro in English. There were people coming in and out of the room quite frequently . . . however, I can assure you that my conversation . . . was in English, and that we communicated effectively that way." Trial Tr. at 48:16-25. When asked again, Dodson responded, "[P]erhaps one of them could have been an interpreter . . . when I spoke with [Castro], I spoke in English and he understood me." Trial Tr. at 49:1-5.

Castro admitted that he alerted officers to the package in the closet and that he was holding the package for someone until that person returned to retrieve it. Castro claimed, however, that he did not know that the package contained methamphetamine, although according to Castro, at one point, one of the individually wrapped packages spilled out of the jacket and he put the package back. Trial Tr. at 63. He claimed he first learned that the substance he was keeping in his closet was methamphetamine when the officers told him. Tr. at 64. Castro also

testified that he only used the firearm for target practice and that the cash represented proceeds from the sale of a car. He testified that an interpreter was present when officers arrived at his apartment and when Castro went with officers to the jail, and that the interpreter "was always there" during that time. Trial Tr. at 61:11-18. On cross-examination, Castro again testified to the interpreter's presence. Trial Tr. at 87-89.

The government recalled Miller to the stand as a rebuttal witness, and when the government's attorney asked Miller whether there was an interpreter present while officers searched Castro's home, Miller replied, "No . . . Mr. Castro understood English very well." Miller also testified that an interpreter was not present when Castro made statements to Dodson. Trial Tr. at 91:6-19.

After the conclusion of Castro's trial, officers encountered an interpreter who recalled being present during the search of Castro's home and for some interviews, although the interpreter did not recall whether he was present when Dodson interviewed Castro. The government disclosed this evidence to Castro's counsel.

On May 15, 2007, Castro filed his motion for a new trial. According to the motion, witnesses for the United States presented "false evidence" to the jury that Castro made certain incriminating statements in English to English-speaking law enforcement officers without the assistance of an interpreter. Castro claims that the discrepancies between his testimony and the testimony of the officers at trial on the issue of the interpreter's presence, as well as Castro's limited ability to understand and speak English, were central to the case against him throughout trial and during closing arguments. The court held a post-trial hearing on Castro's motion on June 6, 2007, during which the interpreter testified that he served as an English-Spanish language

interpreter during the search of Castro's apartment and police interviews, but did not recall being present during the interview between Dodson and Castro. For the reasons that follow, the court will deny Castro's motion.

## II.

Rule 33(b)(1) of the Federal Rules of Criminal Procedure allows a motion for a new trial within three years of the verdict if the defendant produces "newly discovered evidence." In determining whether a new trial should be granted under Rule 33 on the basis of newly discovered evidence, the Fourth Circuit uses a five-part test: (1) is the evidence, in fact, newly discovered; (2) are facts alleged from which the court may infer due diligence on the part of the movant; (3) is the evidence relied upon not merely cumulative or impeaching; (4) is the evidence material to the issues involved; and, (5) would the evidence probably result in acquittal at a new trial? United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate. Id.

Looking to Chavis' fifth prong, the court does not find that the "new" evidence of the interpreter's presence during the search of Castro's apartment and portions of police interviews would probably result in an acquittal of Castro at a new trial. Castro possessed a .45-caliber handgun, $9,750.00 in United States currency, two boxes of ammunition, and a 12-gauge semi-automatic shotgun, and approximately six pounds of methamphetamine inside of a trash bag secreted in a jacket hidden in a closet to which Castro admittedly alerted the officers. Under the circumstances Castro's protestations at trial that it was all a big misunderstanding somehow caused by the un-acknowledged presence of an interpreter rang especially hollow. Evidence that an interpreter was indeed present at various times falls far short of properly being characterized

-5-

Case 5:06-cr-00054-SGW   Document 111   Filed 07/09/07   Page 5 of 6   Pageid#: 395

as evidence that probably would result in an acquittal in a new trial.[1] Therefore, the court will deny Castro's motion.

### III.

For the foregoing reasons, the court denies Castro's motion for a new trial.

**ENTER**: This 9th day of July, 2007.

_____
United States District Judge

---

[1] The court concludes that officers did not give "false testimony" at trial, as Castro claims, but rather that one witness for the government, Officer Miller, simply mis- recollected.