CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 19 2009

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 5:06cr00054-1 |
| | ) | |
| v. | ) | 2255 MEMORANDUM OPINION |
| | ) | |
| JUAN E. CASTRO. | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |

Petitioner Juan E. Castro brings this motion pursuant to 28 U.S.C. § 2255, claiming that he received ineffective assistance of counsel because his attorney failed to object to a two-level enhancement for possession of a dangerous weapon under United States Sentencing Guidelines § 2D1.1(b)(1); his attorney failed to raise Kimbrough v. United States, 128 S. Ct. 558 (2007), on appeal or in Castro's Petition for Writ of Certiorari; and his attorney failed to argue that the search warrant for Castro's residence lacked probable cause. Finding no merit in any of these challenges, the court dismisses Castro's motion.

I.

A grand jury in the Western District of Virginia indicted Castro and three other co-defendants. The indictment charged Castro with conspiracy to distribute five hundred grams or more of methamphetamine, in violation of 18 U.S.C. §§ 841 and 846; possession with intent to distribute five hundred grams or more of methamphetamine, in violation of 18 U.S.C. § 841; possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c); and forfeiture of certain assets to the United States pursuant to 21 U.S.C. § 853. Castro entered a plea of not guilty, and on March 29, 2007, a jury found him guilty of the two methamphetamine counts and not guilty of the firearm and forfeiture counts. This court denied Castro's motion for a new trial, and sentenced him to a term of imprisonment of 324 months. The Fourth Circuit affirmed, United States v. Castro, 273

Fed. Appx. 287, 291 (4th Cir. 2008), and the Supreme Court denied certiorari, Castro v. United States, 129 S. Ct. 233 (2008). With this background in mind, the court now recites the pertinent facts for Castro's motion.

The bulk of the government's evidence arose from a search warrant executed at Castro's residence. On June 10, 2006, Investigator Doug Miller of the Harrisonburg Police Department sought a search warrant for 204 South Avenue, Apartment I in Harrisonburg, Virginia. In his affidavit Miller explained that a reliable confidential informant ("CI") had recently made a controlled purchase of methamphetamine. The following surveillance then occurred:

> Approximately 5-8 minutes after the drug purchase a vehicle which the CI said is drove by the person he purchased the methamphetamine from left the purchase location and was surveilled to 204 South Avenue, Harrisonburg Virginia. The vehicle was observed entering the parking lot of 204 South Avenue. Your affiant ran a DMV query on the tag which was being displayed on the vehicle. The information returned with an address of 204 Apartment I South Avenue, Harrisonburg Virginia 22801.
>
> The CI stated that during his/her purchases from the male, He (the male) has always been in this vehicle. The CI has purchased methamphetamine from the male for approximately 1 year and has never seen him deliver the methamphetamine in any other vehicle.

Based on his experience and training, Miller stated that "those involved with the distribution of narcotics keep an amount of the narcotic on their person and in their residence," and "that U.S. currency received for narcotics is often kept at the distributor's residence." Miller sought access to search for controlled substances, U.S. currency, and evidence showing involvement in the distribution or possession of controlled substances. The magistrate issued the warrant and the officers executed it two days later.

Castro sought a hearing under Franks v. Delaware, 438 U.S. 154 (1978). At the hearing,

2

Miller explained that after the controlled purchase occurred another officer, Sergeant Crawford, followed the seller's vehicle to 204 South Avenue and obtained the vehicle's tag number, and later that evening Miller confirmed that the vehicle was still located at that address. Concluding that Miller did not intend to mislead and did not demonstrate a reckless disregard for the truth, the court denied Castro's motion.

At Castro's trial the government established that during the search of Castro's residence, law enforcement found two fully functioning firearms, ammunition, and approximately six pounds of methamphetamine in Castro's bedroom. Officers found the methamphetamine in one closet and a semi-automatic 12-gauge shotgun in the other closet. A lockbox located underneath the bed contained a loaded Ruger .45-caliber handgun, $9,750 in currency, and two boxes of ammunition (one box for each firearm). Government witnesses testified that Castro admitted the six pounds of methamphetamine was the remainder of a ten-pound shipment Castro had purchased for a co-defendant, and that Castro had previously traveled several times to North Carolina to purchase methamphetamine.

Castro's testimony was in stark contrast to the government's evidence. Castro denied knowing that he had methamphetamine in his house, and he denied knowing the purpose of a trip to North Carolina was to obtain methamphetamine. Castro testified that he only fired the shotgun two to three times before it broke, that he enjoyed using the handgun at a firing range, and that the handgun was unloaded at the time of the search. The court found his testimony incredible, and stated during the post-trial and sentencing hearings that the court believed Castro committed perjury.

Castro's Presentence Investigation Report calculated a criminal history category of II and a total offense level of 40, producing a guideline range of 324 to 405 months. The report applied a

3

two-level enhancement for possession of a dangerous weapon, see U.S.S.G. § 2D1.1(b)(1), which Castro's attorney did not challenge. The court sentenced Castro to 324 months and Castro appealed.

While his appeal was pending, Castro claims that he telephoned his counsel and suggested that he integrate Kimbrough v. United States, 128 S. Ct. 558 (2007), into the appellate brief. His attorney declined to do so, and after the Fourth Circuit affirmed, Castro wrote his attorney urging him to include Kimbrough in the Petition for a Writ of Certiorari. His attorney wrote Castro explaining that he had spent a considerable amount of time attempting to integrate Kimbrough into the petition, but in his view Kimbrough did not strengthen the arguments. After the Supreme Court denied certiorari, Castro timely brought this § 2255 motion.

## II.

Castro argues that he received ineffective assistance of counsel[1] when his attorney failed to object to the two-level enhancement for possession of a dangerous weapon because it was clearly improbable that Castro's firearms were connected to his methamphetamine offenses. The court disagrees. Castro's firearms were in close proximity to his methamphetamine, and the court discredits Castro's contradictory testimony. Finding no prejudice, the court dismisses this claim.

United States Sentencing Guideline § 2D1.1(b)(1) enhances a defendant's base offense level by two levels "[i]f a dangerous weapon (including a firearm) was possessed." "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was

---

[1]To demonstrate ineffective assistance of counsel, Castro must show that his attorney's failure to object to this enhancement constituted deficient performance and prejudice. See Strickland v. Washington, 466 U.S. 668 (1984). To demonstrate deficient performance, Castro must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. To demonstrate prejudice, Castro must show that but for counsel's unprofessional errors the result of the proceeding would have been different. Id. at 694.

4

connected with the offense." U.S.S.G. § 2D1.1 cmt.3. "[T]he proximity of guns to illicit narcotics can support a district court's enhancement of a defendant's sentence under Section 2D1.1(b)(1)." United States v. Harris, 128 F.3d 850, 852 (4th Cir. 1997).

Castro argues it was clearly improbable that his firearms were connected with his drug offenses because the jury acquitted him on the charge of possessing a firearm in furtherance of drug trafficking, a co-defendant testified that Castro's handgun had nothing to do with methamphetamine, and Castro himself testified that the guns were unloaded and were not used in connection with drug activity.[2] The simple fact remains that within his bedroom closets Castro stored a fully functioning shotgun and six pounds of methamphetamine, and he kept a loaded, fully functioning handgun and ammunition easily accessible in a lockbox underneath his bed. The close proximity between the firearms and drugs show that it was not clearly improbable that the firearms were connected with his drug offenses.[3] And Castro's testimony and additional affidavit do not help his case. Simply put, the court found his testimony unbelievable, and stated at the post-trial and sentencing hearings that in the court's opinion Castro committed perjury. Finding no prejudice, the court accordingly dismisses this claim.

---

[2]Castro has submitted an affidavit that reiterates these points.

[3]See United States v. Garner, 70 Fed. Appx. 695, 696 (4th Cir. 2003) (enhancement proper when a firearm was found in defendant's closet in close proximity to the drugs also located in the bedroom); United States v. Hernandez, No. 98-4889, 2000 WL 14194, at *5-6 (4th Cir. Jan. 10, 2000) (enhancement proper when two firearms, cash, and ammunition were located in a master bedroom closet, and additional cash and cocaine were located outside the closet in the bedroom).

5

## III.

Castro next argues that he received ineffective assistance of counsel because his attorney failed to raise Kimbrough v. United States, 128 S. Ct. 558 (2007), on appeal or in Castro's Petition for Writ of Certiorari. Because Castro cannot overcome the presumption that his appellate counsel decided which issues were most likely to afford relief on appeal, the court also dismisses this claim.

In Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000), the Fourth Circuit articulated the highly deferential standards that apply to a claim that appellate counsel was ineffective in failing to pursue a claim on direct appeal:

> In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his counsel's representation fell below an objective standard of reasonableness in light of the prevailing professional norms, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.
> In applying this test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal. Counsel is not obligated to assert all nonfrivolous arguments issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. . . . Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Id. at 164 (internal quotations and citations omitted). Castro cannot prevail on this claim because he cannot overcome the presumption that his attorney "decided which issues were most likely to afford relief on appeal." Id. Castro's attorney was charged with winnowing out unmeritorious arguments, and he specifically explained to Castro that he thought Kimbrough did not strengthen the petition. Castro has not demonstrated how this issue was "clearly stronger" than the issues his

6

counsel presented on appeal or in Castro's Petition for a Writ of Certiorari. Id. Accordingly, the court also dismisses this claim.

## IV.

Finally, Castro claims that he received ineffective assistance of counsel when his attorney failed to argue that the search warrant for his residence lacked probable cause, and further, that the good-faith exception under United States v. Leon, 468 U.S. 897 (1984), does not apply.[4] Without deciding whether the affidavit contained probable cause, the court finds that the search was subject to Leon's good faith exception. See United States v. Legg, 18 F.3d 240, 243 (4th Cir. 1994). Finding no prejudice, the court dismisses this claim.

In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court established the good-faith exception to the exclusionary rule, holding that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. at 922. The court then identified four circumstances in which the good-faith exception would not apply: (1) "if the magistrate or judge in issuing a warrant was misled by information and an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; (2) if "the issuing magistrate wholly abandoned his judicial role"; (3) if the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable"; and (4) if under the circumstances the warrant was "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." Id. at 923. Castro contends that

---

[4] To the extent that Castro raises the constitutionality of the search as a free-standing claim, it is not cognizable in a § 2255 proceeding. Stone v. Powell, 428 U.S. 465, 482 (1976).

7

circumstances (1), (2), and (3) prevent the good-faith exception from saving the search. The court disagrees.

Castro first contends the good-faith exception should not apply because Officer Miller presented false testimony at the Franks hearing when he stated that Sergeant Crawford followed the seller to 204 South Avenue after the controlled purchase. Based on Miller's incident report, which explains that the CI was also surveilled after the controlled purchase, Castro essentially argues that Sergeant Crawford could not have been in two places at the same time. This argument is logically flawed because it assumes that Crawford was the only officer conducting surveillance. The incident report explains that Miller first met with Crawford and the CI at "a pre-arranged location in the City of Harrisonburg." The CI was then "surveilled" to the controlled purchase location. After the purchase, the CI was "surveilled" before he met with Miller "at a pre-arranged location in the County of Rockingham." Id. The report never states that Miller was not conducting surveillance. Indeed, the most logical explanation is that Miller and Crawford followed the CI to the controlled purchase location and after the purchase they parted ways, Crawford following the seller, Miller following the CI to another pre-arranged location.

Castro next contends that the magistrate wholly abandoned his judicial role by rubber stamping Miller's "bare bones" affidavit. Castro essentially challenges the affidavit's substance, and it is more appropriate to analyze his argument under the third circumstance, that is, whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. In this regard, Castro maintains that the only information in the affidavit associating Castro's residence with drug activity were Miller's generalized, experienced-based conclusions that narcotics dealers store drugs, currency, and other paraphernalia in their homes. This argument

8

misses the point because the affidavit establishes a nexus between the controlled purchase and Castro's residence. Probable cause requires a sufficient nexus between the criminal activity, the location to be searched, and the items to be seized. See United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993) ("[T]he crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched."). In this case, the vehicle is the nexus linking Castro's residence with methamphetamine trafficking. According to the affidavit, the vehicle was the common element in a pattern of methamphetamine trafficking that continued for a year. After a controlled purchase, the vehicle was followed to 204 South Avenue where it was then determined that the vehicle was registered to someone at 204 South Avenue, Apartment I. The warrant sought access to this residence to search for drugs, currency (particularly the proceeds of the controlled purchase), and any other evidence of drug trafficking. Thus, contrary to Castro's assertion, the affidavit set forth concrete information implicating his residence in methamphetamine trafficking. Whether that nexus was sufficient to establish probable cause may be a close question, but it cannot be said that the warrant was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Accordingly, the court concludes that the search was subject to Leon's good-faith exception. Finding no prejudice, the court dismisses Castro's final ineffective assistance claim.

V.

For the reasons stated herein, the court dismisses Castro's § 2255 motion.

**ENTER**: This 19th day of May, 2009.

United States District Judge

9