IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 5:06-cr-54 |
| v. ) | |
| ) | |
| JUAN EVANGELISTA CASTRO, ) | By: Michael F. Urbanski |
| Defendant-Petitioner ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on Juan Evangelista Castro's pro se motion for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 238. Because Castro has not demonstrated extraordinary and compelling circumstances to justify his release, the court will **DENY** his motion.

I.

On November 15, 2006, a grand jury returned a seven-count indictment against Castro and three co-defendants. Castro was charged with knowingly and intentionally distributing, or possessing with the intent to distribute, five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count One); knowingly and intentionally possessing five hundred or more grams of a mixture or substance containing a detectable amount of methamphetamine with intent to distribute (Count Five); possessing firearms in furtherance of a drug trafficking offense which could have been prosecuted in a Court of the United States with intent to distribute (Count Six); and a forfeiture allegation (Count Seven). Indictment, ECF No. 1 at 1-4. On March 29, 2007, a jury returned a verdict finding Castro guilty on Counts One and Five. ECF No. 89.[1]

---

[1] Castro was found not guilty on Count Six. J., ECF No. 121. Count Seven was dismissed after the jury returned

On August 23, 2007, Castro was sentenced to 324 months in prison. J., ECF No. 121. Castro appealed and the Fourth Circuit affirmed the conviction and sentence on April 14, 2008. ECF Nos. 152, 153. On February 2, 2009, Castro filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255, and the motion was dismissed. ECF Nos. 172, 183. The Fourth Circuit denied a certificate of appealability and dismissed Castro's appeal. ECF Nos. 203, 204. On December 29, 2014, Castro filed a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) pursuant to Amendment 782 of the United States Sentencing Guidelines ("USSG"). ECF No. 231. On June 8, 2015, the court granted Castro's motion and reduced his sentence from 324 months to 262 months. ECF No. 234. Castro currently is housed at FCI Safford and has a projected release date of April 5, 2025.[2]

## II.

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction

---

a Special Verdict on the forfeiture allegations. Id.; ECF No. 90.
[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (last visited July 28, 2022) (search "Juan Evangeli Castro")

> . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Castro's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.[3]

The court begins by considering the threshold requirement of exhaustion. United States v. Muhammad, 16 F. 4th 126, 129-30 (4th Cir. 2021). This requirement, which is non-jurisdictional, is "satisfied if a defendant requests the Bureau of Prisons to bring a motion [for compassionate release] on their behalf and either fully exhausts all administrative rights to appeal the Bureau's decision or waits 30 days from the date of their initial request to file a motion in the district court." Id. at 131. Therefore, for Castro to have sufficiently exhausted he must have shown that he submitted a request to the warden for a reduction in his sentence, and then either waited 30 days or completed the appeals process of that request. In his motion for compassionate release, Castro shows that his Administrative Remedy Request was received by the Facility Administrator on August 27, 2021, and was denied on August 31, 2021. ECF No. 238-1 at 4. Accordingly, the court finds that Castro has exhausted his administrative remedies.

Looking next at whether there are "extraordinary and compelling" reasons for compassionate release, the United States Sentencing Commission, Guidelines Manual ("USSG") § 1B1.13 application notes state that "extraordinary and compelling" reasons exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent

---

[3] See United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *2 (W.D.N.C. Mar. 15, 2021).

3

of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the Bureau of Prisons ("BOP") for "other reasons" than, or in combination with, those described in Application Notes (A)-(C). Id. at cmt. n. 1(A)-(D).

In United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020), the Fourth Circuit held that district courts may consider "any extraordinary and compelling reason for [compassionate] release that a defendant might raise." Id. (citing United States v. Brooker, 976 F.3d 228, 239 (2d Cir. 2020)). In so holding, the court rejected the notion that district courts are constrained by the policy statement found in USSG § 1B1.13 and the application note that accompanies the policy statement. See discussion, McCoy, 981 F.3d at 280-84.

### A. COVID-19

Castro first argues that his living conditions place him at risk of being infected with COVID-19 and the Federal Bureau of Prisons cannot protect him from being infected with the virus. ECF No. 246 at 13. During the COVID-19 pandemic, this court has found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility. But the assessment of compassionate release claims based on COVID-19 has changed with the advent of vaccines against the disease. According to the Centers for Disease Control and Prevention, studies show that the "COVID-19 vaccines are effective at keeping you from getting COVID-19" and "will also help keep you from getting seriously ill

4

even if you do get COVID-19."[4]

Castro does not indicate whether he has been vaccinated against COVID-19 but asserts in his memorandum in support of his motion for compassionate release that on January 21, 2022, there was an outbreak at the prison and only the "non-vaccinated prisoners were tested and removed from the housing unit," and "all of the 'Vaccinated' were left." ECF No. 246 at 16. He added that he and "virtually all others were infected with presumably the omicron and were symptomatic for days, with no medical attention." Castro further indicates that he recovered from COVID-19. Id. From these statements the court will assume that Castro has been vaccinated against COVID-19.

Because he was vaccinated, Castro no longer has a particularized susceptibility to severe illness from COVID-19.[5] The court further notes that as of July 28, 2022, FCI Safford has one inmate and five staff members with active cases of COVID-19.[6] The low positivity rate of COVID-19 at the facility supports the conclusion that Castro is not at particularized risk for contracting COVID-19 and that the measures taken at FCI Safford are appropriate to deter potential infection in the future.

### B. Remaining Claims

The crux of Castro's remaining claims is that because of an immigration detainer filed with the BOP, he cannot participate in BOP programming.[7] Specifically, Castro argues that he

---

[4] Ctrs. for Disease Control and Prevention, Key Things to Know About COVID-19 Vaccines, (updated June 25, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html?s_cid=10490:covid%20vaccination:sem.ga:p:RG:GM:gen:PTN:FY21.
[5] See, e.g., United States v. Williams, No. 5:01-CR-00012-KDB, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (denying compassionate release motion from partially vaccinated inmate); United States v. Wakefield, No. 1:19-cr-00095-MR-WCM, 2021 WL 640690, at *2 (W.D.N.C. Feb. 18, 2021) (same); United States v. Beltran, No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021) (same).
[6] https://www.bop.gov/coronavirus/ (last viewed July 28, 2022).
[7] Castro was born in El Salvador and entered the United States illegally, although at some point he obtained a

5

is not eligible for release to a halfway house and is not eligible to participate in programs provided by the First Step Act time credit program, 18 U.S.C.A. § 3632(d)(4), or the Residential Drug Abuse Program (RDAP), offered by the BOP. See 18 U.S.C. § 3621(e)(2)(B); 28 C.F.R. § 550.53.

Looking first at halfway house placement, an inmate's release to a halfway house is governed by 18 U.S.C. § 3624(c). The statute directs the BOP to issue regulations regarding placement in a halfway house. 18 U.S.C. § 3624(c)(6). In issuing regulations, the BOP exercised its discretion and made Immigration and Customs Enforcement detainees ineligible for release to a halfway house. 28 C.F.R. § 550.55(b). Courts have consistently found that the BOP may exclude inmates with immigration detainers from being released to a halfway house. See McLean v. Crabtree, 173 F.3d 1176, 1185 (9th Cir. 1999) ("[T]he detainer exclusion is a permissible exercise of the BOP's broad discretion in administering the sentence reduction treatment program."); Cruz v. United States, No. 12-14216-Civ-GRAHAM, 2012 WL 13071522, at *12 (S.D. Fla. Dec. 20, 2012) ("Courts have routinely upheld the BOP's consideration of ICE detainers in making classification decisions regarding inmates, including such issues as security level and eligibility for prison programs."); Fernandez-Collado v. I.N.S., 644 F.Supp. 741, 744 (D. Conn. 1986) ("Petitioner has neither a legitimate statutory nor constitutional entitlement to those prison programs from which he may be denied access as a result of the detainer.").

Castro argues that because of his immigration detainer, he cannot be released to a halfway house pursuant to 28 C.F.R. § 550.55(b). He then asserts that because he cannot be

---

temporary work visa and Social Security Number. Because of his illegal immigration status, he is subject to deportation. PSR, ECF No. 125 ¶ 34; J., ECF No. 121 at 4.

released to a halfway house, his sentence should be credited with the time that he would be spending in a halfway house if he were eligible. However, Castro's ineligibility for release to a halfway house does not present an extraordinary and compelling reason for granting compassionate release. Rather, it is a lawful exercise of discretion by the BOP and affects all federal inmates who have immigration detainers. Thus, Castro's ineligibility to be housed in the community is not a basis for compassionate release.

Turning to the time credit program, as part of the First Step Act, inmates can earn time credits for participating in Evidence-Based Recidivism Reduction Programs (EBRR) or in Productive Activities (PA). 28 C.F.R. § 523.41. Eligible inmates earn 10 days of time credits for every 30-day period that they have successfully participated in EBRR programs or PAs and an additional 5 days of time credits for every 30-day period if the inmate is determined by the BOP to be at a minimum or low risk for recidivating and has maintained a consistent minimum or low risk of recidivism over the most recent two consecutive risk and need assessments conducted by the BOP. 28 C.F.R. § 523.42. Time credits are applied toward prerelease custody or supervised release when certain criteria are met. 28 C.F.R. § 523.44.

If Castro were eligible to participate in the First Step Act time credit program, upon completion he would be entitled to time credits toward his sentence. However, deportable prisoners are ineligible to apply time credits under the First Step Act time credit program. "A prisoner is ineligible to apply time credits under subparagraph(c) if the prisoner is the subject of a final order of removal under any provision of the immigration laws . . . ." 18 U.S.C. § 3632(d)(4)(E)(i). Castro argues that his term of imprisonment is harsher than that of inmates who do not have immigration detainers and that the difference in the ability to earn a reduction

7

in his sentence is an extraordinary and compassionate circumstance warranting compassionate release.

However, the statute describing the development of the risk and needs assessment system enacted under the First Step Act gives the authority to develop and administer the program to the Attorney General and the BOP. 18 U.S.C. § 3632. The statute and Code of Federal Regulations pertain to "internal operations and decisions by the BOP and not to decisions the Court makes in conjunction with motions for sentence reduction." United States v. Weaver, No. 18-20364, 2022 WL 350719, at *2 (E.D. Mich. Feb. 4, 2022). See also Saleh v. Young, No. 5:19-CV-00468, 2021 WL 1758711 at *2 (S.D. W.Va. May 4, 2021) (commenting that language of 18 U.S.C. § 3621(b) gives the BOP broad discretionary authority regarding a prisoner's placement and classification.)

Castro cites to no authority and none was found to support the notion that because he is not entitled to participate in the time credits program his sentence should nonetheless be reduced. As with eligibility for release to a halfway house, determining who is eligible to participate in the time credits program is a lawful exercise of discretion by the BOP and affects all federal inmates who are subject to immigration detainers. Therefore, ineligibility to participate in the program is not an extraordinary and compelling reason warranting compassionate release.

Similarly, participation in the RDAP program, a three-part drug treatment program with a community-based residential component, allows some inmates to reduce their sentences by up to one year. 18 U.S.C. § 3621(e); 28 C.F.R. §§ 550.53-550.55. The BOP may exclude inmates from the RDAP program, either categorically or on a case-by-case basis, subject to its

obligation to interpret the statute reasonably. Lopez v. Davis, 531 U.S. 230, 240 (2001) (citing Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 844 (1984)). The BOP has decided to exclude deportable prisoners from participating in the RDAP program because they are not eligible for community-based treatment. Talero v. O'Brien, No. 1:11cv169, 2012 WL 1697348, at *2 (N.D. W.Va. Apr. 19, 2012) (citing 28 C.F.R. § 550.55(b)(1)).

The fact that Castro cannot participate in the RDAP program is not an extraordinary and compelling circumstance warranting compassionate release. As set forth above, courts have found that excluding inmates with detainers from participating in treatment programs and earning time credits is within the BOP's discretion, and it equally affects all inmates with immigration detainers.

While it is unfortunate for Castro that he is unable to participate in the BOP programs and earn a reduction in his sentence, his ineligibility does not constitute an "extraordinary and compelling reason" for compassionate release. Accordingly, the court **DENIES** Castro's motion for compassionate release. Having found that Castro has not met the initial threshold for compassionate release, the court will not address the § 3553(a) factors.

### III.

For the reasons stated herein, the court **DENIES** Castro's motion for compassionate release, ECF No. 238.

9

An appropriate order will be entered.

It is so **ORDERED**.

Entered: September 2, 2022

Michael F. Urbanski
Chief United States District Judge